UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Civil No. 15-cv-81298-MARRA/MATTHEWMAN

JULIAN BIVINS, as personal representative
of the ancillary estate of Oliver Wilson Bivins,

    Plaintiff,

vs.

CURTIS CAHALLONER ROGERS, JR., as
former guardian, et al.,

    Defendants.
_____/



FILED by ____ D.C.

SEP 0 7 2016

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

## OMNIBUS ORDER ON DISCOVERY MOTIONS

THIS CAUSE is before the Court on Defendants, Brian M. O'Connell, Ashley N. Crispin, Stephen Kelly, and Ciklin Lubitz & O'Connell's ("the CLO Defendants") Second Corrected and Amended Motion for Protective Order [DE 83]; Defendant Stephen Kelly's Motion for Protective Order Regarding Subpoena for Documents to Accountants [DE 85]; Defendant Curtis Cahalloner Rogers, Jr.'s Motion for Protective Order [DE 89]; Plaintiff, Julian Bivins, as ancillary Personal Representative of the Estate of Oliver Wilson Bivins' ("Plaintiff") Motion to Compel CLO Defendants' Response to Plaintiff's First Request for Production [DE 112]; and Plaintiff's Motion to Compel Stephen Kelly's Response to Plaintiff's First Request for Production [DE 113]. These matters were referred to the undersigned by United States District Judge Kenneth A. Marra. *See* DE 51. The motions have been fully briefed, and the Court held a discovery hearing on the motions on August 24, 2016.

1

### I. ISSUES PRESENTED

This Order primarily addresses the legal issue of who, under Florida law, holds the attorney-client privilege when a guardian of a ward hires an attorney to assist the guardian. Specifically, after the death of the ward, does the attorney-client privilege run between the guardian and the guardian's attorney or between the personal representative of the deceased ward's estate and the guardian's attorney? The Court's determination of the attorney-client privilege issue will require careful analysis of the so-called fiduciary-duty exception to the attorney-client privilege in light of applicable case law and the 2011 enactment of Section 90.5021, Florida Statutes. A secondary issue involves the application of Florida's accountant-client privilege to the same set of facts.

The Court's resolution of these issues will determine whether Plaintiff, as personal representative of the estate of the deceased ward, may step into the shoes of the deceased ward and waive the attorney-client privilege and accountant-client privilege and thereby obtain otherwise privileged documents from the attorneys and accountants retained by the deceased ward's guardians. The Court's Order will, therefore, address the interplay of Florida case law, federal case law, and the recently enacted Section 90.5021, Florida Statutes.

### II. BACKGROUND

The basic underlying facts of this case are that Defendants Brian M. O'Connell and Ashely N. Crispin, as well as their law firm Defendant Ciklin Lubitz & O'Connell, were and are attorneys for the guardians appointed by the Florida state probate court to act for the interest of the ward, Oliver Bivins, Sr. Defendant Stephen Kelly was appointed as an emergency temporary guardian in 2011, Defendant Curtis Rogers was appointed guardian later in 2011, and Defendant Kelly was reappointed in 2014. Of course, the guardians were appointed for the ward, Oliver Bivins, Sr.,

while he was alive, and the guardians hired attorneys and accountants to assist them in handling the guardianship.

After Oliver Bivins, Sr., passed away, Plaintiff, one of his children, was appointed personal representative of the estate and then brought this action against the guardians and their attorneys based on alleged acts and omissions committed during the guardianship. Plaintiff generally alleges that the Defendants did not properly administer the guardianship to maximize its assets. Plaintiff has also been litigating against the guardians in state court.

In Plaintiff's Amended Complaint [DE 18], he alleges (1) breach of fiduciary duty against Defendants Rogers, O'Connell, Crispin, Ciklin, Stein, Beys, and Stein Law Firm; (2) breach of fiduciary duty against Defendants Kelly, O'Connell, Crispin, Ciklin, Stein, Beys, and Stein Law Firm; (3) negligence against Defendant Rogers; (4) negligence against Defendant Kelly; (5) professional negligence against Defendant O'Connell; (6) professional negligence against Defendant Crispin; and (7) professional negligence against Defendant Stein.

Several of the pending discovery motions [DEs 83, 89, 112, and 113] primarily deal with the issue of whether there was an attorney-client relationship between the attorneys representing the guardians and the ward, Oliver Bivins, Sr., and whether there is currently an attorney-client relationship between the attorneys representing the guardians and Oliver Bivins, Sr.'s estate. The Court's determination as to whether Plaintiff holds his deceased father's attorney-client privilege or whether the guardian holds the attorney-client privilege will dictate whether documents held by the attorneys must be produced to Plaintiff. One of the pending discovery motions [DE 85] presents the similar issue of whether there was an accountant-client relationship between the accountants hired by the guardians and the ward, Oliver Bivins, Sr., and whether there is currently an accountant-client relationship between the accountants and Oliver Bivins, Sr.'s estate.

### III.     LEGAL ANALYSIS

#### (i)     Attorney-Client Privilege

State law provides the rule of decision in diversity actions where a party asserts the attorney-client privilege. *See, e.g., 1150 Brickell Assoc, v. QBE Ins. Co.,* 253 F.R.D. 697, 699 (S.D. Fla. 2008); Fed. R. Evid. 501. Under Florida law, an attorney's client is permitted "to refuse to disclose, and to prevent any other person from disclosing, the contents of confidential communications when such other person learned of the communications because they were made in the rendition of legal services to the client." § 90.502, Fla. Stat. The confidentiality of attorney-client privileged communications "is an interest traditionally deemed worthy of maximum legal protection." *State Farm Fla. Ins. Co. v. Puig,* 62 So.3d 23, 27 (Fla. 3d DCA 2011); *Dykstra v. Florida Foreclosure Attorneys, PLLC,* Case No. 15-81275-Marra/Matthewman, 2016 WL 3344785, at *1 (S.D. Fla. Jun. 13, 2016). Under Florida law, the burden of establishing the attorney-client privilege rests on the party claiming it. *Milinazzo v. State Farm Ins. Co.,* 247 F.R.D. 691 (S.D. Fla. 2007).

#### (A) The Analysis under *Tripp v. Salkovitz*

The Court first shall analyze whether there is any attorney-client relationship between the personal representative of Oliver Bivins, Sr.'s estate and the attorneys representing the guardians. In *Tripp v. Salkovitz,* 919 So.2d 716 (Fla. 2d DCA 2006), the court determined that the attorney-client privilege for all communications between the guardian and the guardian's attorney belonged to the estate as the ward's successor in interest. The *Tripp* court discussed the so-called fiduciary duty exception to the attorney-client privilege. *Id.* The court determined that *in camera* review would be necessary to determine "which documents are specifically related to the representation of the Ward's interest and are thus discoverable." *Id.* at 719.

4

The *Tripp* court primarily relied on two other cases in making its ruling. In *Riggs Nat'l Bank of Washington, D.C. v. Zimmer*, 355 A.2d 709 (Del. Ch. Ct. 1976), certain beneficiaries of a trust estate brought an action to compel the trustees to reimburse the estate for alleged breaches of trust. The beneficiaries moved to compel production of a legal memorandum prepared by an attorney. *Id.* at 710. The court explained,

> Thus, it seems to me that whether or not disclosure of the document in question should be allowed in this instance must be determined in light of the purpose for which it was prepared, and the party or parties for whose benefit it was procured, in relation to what litigation was then pending or threatened. If it is determined that the beneficiaries were ultimately the persons intended to benefit from the legal assistance requested and the memorandum which was drafted in response thereto, the issue of the asserted right to inspect the document against the defensive claim of privileges comes into clearer focus.

*Id.* at 711. Ultimately, the court found that the memorandum was prepared for the benefit of the beneficiaries of the trust and not for the trustees' own defense in any litigation and that the "trustees' invocation of the privileges cannot shield the document involved herein from the beneficiaries' desire to examine it." *Id.* at 711-12.

The second case that the *Tripp* court relied on was *Jacob v. Barton*, 877 So.2d 935 (Fla. 2d DCA 2004). In that case, the court found that the circuit court should have conducted *in camera* review to determine whether any of the explanatory entries of certain legal bills would be protected under the attorney-client privilege. *Id.* at 937. The court explained the following:

> Thus, when confronted with the issue at hand here, a court must decide whose interests the attorneys represent-the trustee's or the beneficiary's. *First Union Nat'l Bank of Fla. v. Whitener*, 715 So.2d 979, 982 (Fla. 5th DCA 1998). Usually, a lawyer retained by a trust represents the trustee, not the beneficiary, even though the fees are paid with trust funds that would otherwise go to the beneficiary. *First Union Nat'l Bank v. Turney*, 824 So.2d 172, 185-86 (Fla. 1st DCA 2001); *see also Compson*, 629 So.2d at 851. If the attorney represents the trustee, the trustee holds the lawyer-client privilege. *See* § 90.502(2),(3)(a), Fla. Stat. (2001); *Whitener*, 715 So.2d at 982; *Compson*, 629 So.2d at 851. In some circumstances, however, the beneficiary may be the person who will ultimately benefit from the legal work

5

> the trustee has instructed the attorney to perform. *See, e.g., Riggs Nat'l Bank of Washington, D.C. v. Zimmer*, 355 A.2d 709, 711 (Del.Ch. Ct.1976) (noting that legal memorandum concerning trust tax issues, written before beneficiaries' litigation against trustee began, was prepared for the benefit of the trust beneficiaries) (cited in *Compson*, 629 So.2d at 850). In that situation, the beneficiary may be considered the attorney's "real client" and would be the holder of the lawyer-client privilege. *Whitener*, 715 So.2d at 982. But if the "real client" is the trustee, the beneficiary would have to prove the existence of some exception to overcome the privilege. *Id.*

*Barton*, 877 So.2d at 937. Thus, under the *Tripp* line of cases, it would appear that Plaintiff holds his deceased father's attorney-client privilege and may waive the privilege to obtain the documents he seeks, and, further, that the guardians and the guardians' attorneys may not assert the attorney-client privilege to prevent the production of documents sought by Plaintiff.

### (B) The 2011 Enactment of Section 90.5021, Florida Statutes

In 2011, however, the Florida legislature enacted Section 90.5021, Florida Statutes. This statute states as follows:

> (1) For the purpose of this section, a client acts as a fiduciary when serving as a personal representative or a trustee as defined in ss. 731.201 and 736.0103, an administrator ad litem as described in s. 733.308, a curator as described in s. 733.501, a guardian or guardian ad litem as defined in s. 744.102, a conservator as defined in s. 710.102, or an attorney in fact as described in chapter 709.
>
> (2) A communication between a lawyer and a client acting as a fiduciary is privileged and protected from disclosure under s. 90.502 to the same extent as if the client were not acting as a fiduciary. In applying s. 90.502 to a communication under this section, only the person or entity acting as a fiduciary is considered a client of the lawyer.
>
> (3) This section does not affect the crime or fraud exception to the lawyer-client privilege provided in s. 90.502(4)(a).

Fla. Stat. § 90.5021.

Plaintiff argues that the statute does not affect the prior case law, such as *Tripp*, *Barton*, and *Riggs*. Plaintiff contends that, because post-2011 cases cite the pre-2011 *Tripp* body of case

6

law, the statute did not vitiate such prior case law. He also points out that the Florida Supreme Court declined to follow a recommendation to adopt Section 90.5021. Finally, Plaintiff asserts that it would be nonsensical to allow beneficiaries and estates to sue the attorneys who represent the guardians for malpractice (which Defendants concede beneficiaries and estates are permitted to do by law), but then prevent the beneficiaries and estates from obtaining discovery necessary from the attorneys to prove their malpractice cases. Defendants, on the other hand, argue that Section 90.5021 abrogated the *Tripp* body of case law that preceded the enactment of the statute. Defendants also rely on an Eleventh Circuit case discussed below. Thus, if Section 90.5021 is controlling, as argued by Defendants, then the guardians and the guardians' attorneys would be permitted to assert the attorney-client privilege as a bar to production of the privileged documents sought by Plaintiff.

### (C) The Court's Analysis

#### a. Whether the Florida Supreme Court's Decision to Not Adopt Section 90.5021, Florida Statutes, Renders the Statute Ineffective

As to Plaintiff's argument that the Florida Supreme Court declined to follow a recommendation to adopt Section 90.5021, the Florida Supreme Court explained in a 2014 decision,

> In chapter 2011–183, section 1, Laws of Florida, the Legislature enacted section 90.5021, Florida Statutes, which establishes a "fiduciary lawyer-client privilege." According to the Committee, whether a fiduciary is entitled to the lawyer-client privilege when the fiduciary employs an attorney in connection with his or her fiduciary duties has been an issue in several cases; for example, the Committee cites *Jacob v. Barton,* 877 So.2d 935 (Fla. 2d DCA 2004), and \*537 *Tripp v. Salkovitz,* 919 So.2d 716 (Fla. 2d DCA 2006). We decline to follow the Committee's recommendation to adopt the new provision of the Code because we question the need for the privilege to the extent that it is procedural.

7

*In re Amendments to Florida Evidence Code*, 144 So. 3d 536, (Mem)–537 (Fla. 2014). While the Florida Supreme Court did decline to follow the Committee's recommendation to adopt the new provision of the Evidence Code, it did so because the Court "question[ed] the need for the privilege to the extent that it is procedural" and not because the statute was unconstitutional or otherwise unlawful. The Florida Supreme Court's decision not to adopt Section 90.5021 because it questioned the need for the privilege "to the extent that it is procedural" did not vitiate or overturn the statute. Therefore, contrary to Plaintiff's argument, the statute remains the law in Florida.

Moreover, Section 90.5021 was expressly incorporated into the Probate Code pursuant to Administration of Estates and Florida Probate Rule 5.240(b)(2), which further supports the argument that it is currently in effect. Finally, secondary sources cite Section 90.5021 as a statute in effect. *See, e.g.*, Charles W. Ehrhardt, 1 Fla. Prac., Evidence § 90.5021 (2016 ed.). Thus, the Court rejects Plaintiff's argument that Section 90.5021 is not the current law in Florida. The Court also sees no reason to explore the legislative intent behind the statute since the wording of the statute is so clear and unambiguous.

### b. Whether the Section 90.5021, Florida Statutes, Changed the Law on Attorney-Client Privilege

Plaintiff primarily cites two post-2011 cases to support his position that Section 90.5021 did not change the law. First, in *State v. Carter*, 177 So.3d 1028 (5th DCA 2015), a criminal case involving a motion to suppress, the court considered the medical professional-patient privilege and found that the privilege "is intended to protect the privacy of the patient, not the guardian. A guardian cannot rely on the protection of even a powerful and long-standing privilege when the privilege belongs to the ward and is counter to the ward's interests." *Id.* at p. 1031. The court

8

Case 9:15-cv-81298-KAM Document 132 Entered on FLSD Docket 09/07/2016 Page 9 of 18

then cited *Tripp*, 919 So.2d at 718-19, and *Barton*, 877 So.2d at 937. *Id.* While the court may have cited those cases, the *Carter* case did not involve the attorney-client privilege at all and is easily distinguished. *Carter* provides little support for Plaintiff's position.

*Saadeh v. Connors*, 166 So.3d 959 (Fla. 4th DCA 2015), is the second post-2011 case in which a court relied on the pre-2011 body of law. In that case, the appellate court needed to determine whether the trial court had properly granted summary judgment on a finding that an attorney representing the appellant's court-appointed guardian owed the appellant no duty under a third-party beneficiary theory. *Id.* at 960. The court noted that "[e]ven though there is no lawyer-client relationship between the alleged incapacitated person who is a temporary ward and the lawyer for the emergency temporary guardian, counsel for the emergency temporary guardian owes a duty of care to the temporary ward." *Id.* at 963. It also stated that the appellant was the "apparent intended beneficiary of the guardian's attorney's services. It would be antithetical to suggest that a guardian—appointed for the sacrosanct reason of providing protection to the ward and at the ward's expense—could *ever* take *any* action which would knowingly be adverse to the alleged incapacitated person." *Id.* at 963-64.

The *Saadeh* court reversed and remanded and explained that "[a]s a matter of law, the ward in situations as this, is both the primary *and* intended beneficiary of *his* estate…Whether there was a breach of the duty which caused damages obviously remains to be determined. But [the appellant] has a viable and legally recognizable cause of action against the guardian's attorney…." *Id.* at 964. The *Saadeh* case is distinguishable in that it considers the duties of a guardian's attorney to a beneficiary rather than whether the attorney-client relationship exists between the guardian's attorney and the beneficiary. Moreover, the court in *Saadeh* clearly stated that there is

9

no such attorney-client relationship. Therefore, *Saadeh* provides little support for Plaintiff's position.

### c. Eleventh Circuit Case Law

The various Defendants in this case rely on a 2015 Eleventh Circuit Court of Appeals opinion to support their argument that the estate has no attorney-client relationship with the guardians' attorneys, and, thus, Plaintiff cannot obtain any attorney-client privileged documents on the estate's behalf. In *Bain v. McIntosh*, 597 Fed.Appx. 623 (11th Cir. 2015), the court explained the following:

> The Florida Legislature has indicated an unwillingness to expand a lawyer's fiduciary duties to a person other than the trustee. Pursuant to Florida Statutes § 90.5021(2) (2011), "only the person or entity acting as a [trustee] is considered a client of the lawyer." Furthermore, the Rules Regulating the Florida Bar, which are promulgated by Florida Supreme Court, narrowly limit a lawyer's duties to third parties when serving as the personal representative of an estate. R. Regulating Fla. Bar 4–1.7 cmt. (2014) ("In Florida, the personal representative is the client rather than the estate or the beneficiaries."); *see also* ABA Comm. on Ethics & Prof'l Responsibility, Formal Op. 94–380 (1994) ("The majority of jurisdictions consider that a lawyer who represents a fiduciary does not also represent the beneficiaries, and we understand the Model Rules to reflect this majority view." (citation omitted)).

*Id.* at 623-24.

The *Bain* case affirmed a case from the Middle District of Florida, *Walther v. Kane*, No. 6:13-CV-472-Orl-37GJK, 2014 WL 3695385 (M.D. Fla. Jul. 24, 2014). The *Walther* case involved trust beneficiaries who were suing the attorney who represented the trustee for breach of fiduciary duty. *Id.* at *1-2. The defendants moved for summary judgment. *Id.* at *2. The court in that case rejected the plaintiffs' argument in opposition to defendants' motion for summary judgment for the following reasons:

> Importantly, Plaintiffs rely on a case from a Delaware state court that no Florida court has cited for the proposition that an attorney retained by a trustee may be

10

> liable to the trust beneficiaries for breach of fiduciary duty. (*See id.* (citing *Riggs Nat'l Bank of Washington, D.C. v. Zimmer,* 355 A.2d 709, 711 (Del.Ch.1976)).) Indeed, the few Florida cases citing the *Riggs* decision declined to apply the fiduciary duty exception where the evidence indicated that the trustee-not the beneficiaries of the trust-was the attorney's client. *See Barnett Banks Trust Co., N.A. v. Compson,* 629 So.2d 849, 851 (Fla. 2d DCA 1993) (rejecting trust beneficiary's arguments). Further, the Florida [legislature] has enacted legislation explicitly rejecting the fiduciary duty exception. Fla. Stat. § 90.5021(2) ("[O]nly the person or entity acting as a [trustee] is considered a client of the lawyer.").

*Id.* at *3.

Plaintiff distinguishes the *Walther* and *Bain* cases on the basis that they involved beneficiaries of a trust and the attorney for the trustee—and not a guardian of a ward and the guardian's attorneys—but, as pointed out by Defendants at the hearing on this matter, both trustees and guardians are specifically listed in Section 90.5021(1). The new statute considers both trustees and guardians to be equivalents in the wording of the statute. *Bain*, therefore, does provide support for Defendants' position that Section 90.5021 controls in this case.

### d. Plaintiff's Fairness Argument

Plaintiff's final argument is that it would not be fair or logical for courts to prevent wards or their estates from obtaining documents from attorneys who represented their guardians when the wards paid the attorney's fees, and the legal work was completed on the wards' behalf. Plaintiff asserts that, since wards and their estates are permitted to sue the guardians' attorneys for malpractice, it would only make sense for the wards and their estates to be able to obtain the documents necessary to prove their malpractice cases. While Plaintiff's argument is arguably logical, the Court cannot simply ignore the applicable existing law. This Court will not make policy decisions as that is the job of the legislature. Whether it was prudent or not for the Florida legislature to enact Section 90.5021 is not within the purview of this Court. The fact of the matter is that Section 90.5021 is clear and unambiguous, and the statute supersedes the pre-2011 case law.

11

Therefore, Plaintiff (as personal representative of the estate of the deceased ward) cannot step into the shoes of the ward and waive the attorney-client privilege under the facts of this case.

### (ii) Accountant-Client Privilege

A secondary issue in this case is whether there exists an accountant-client relationship between Oliver Bivins, Sr.'s estate and the accountants hired by the guardians. *See* DE 85. Section 90.5055, Florida Statutes, sets forth the accountant-client privilege. It states in relevant part:

> (1) For purposes of this section:
> (a) An "accountant" is a certified public accountant or a public accountant.
> (b) A "client" is any person, public officer, corporation, association, or other organization or entity, either public or private, who consults an accountant with the purpose of obtaining accounting services.
> (c) A communication between an accountant and the accountant's client is "confidential" if it is not intended to be disclosed to third persons other than:
> 1. Those to whom disclosure is in furtherance of the rendition of accounting services to the client.
> 2. Those reasonably necessary for the transmission of the communication.
> (2) A client has a privilege to refuse to disclose, and to prevent any other person from disclosing, the contents of confidential communications with an accountant when such other person learned of the communications because they were made in the rendition of accounting services to the client. This privilege includes other confidential information obtained by the accountant from the client for the purpose of rendering accounting advice.
> (3) The privilege may be claimed by:
> (a) The client.
> (b) A guardian or conservator of the client.
> (c) The personal representative of a deceased client.
> (d) A successor, assignee, trustee in dissolution, or any similar representative of an organization, corporation, or association or other entity, either public or private, whether or not in existence.
> (e) The accountant, but only on behalf of the client. The accountant's authority to claim the privilege is presumed in the absence of contrary evidence.

Fla. Stat. § 90.5055. Thus, the privilege would only protect any <u>communications</u> between the accountants and the guardians. Defendant Stephen Kelly conceded at the August 24, 2016

hearing that all non-privileged financial documents had been or would be produced to Plaintiff and that the only issue at this point is whether the confidential communications must be produced.

Plaintiff's position is that, based upon the reasoning of the *Tripp* line of cases, Plaintiff (as personal representative of the estate of the deceased ward) steps into the shoes of the ward and has the right to waive the accountant-client privilege and obtain any confidential communications between the guardians and their accountants.[1] Therefore, assuming the fiduciary exception applies in the context of Florida's accountant-client privilege, this Court, under *Tripp*, would have to conduct an *in camera* review of any confidential communications to determine which communications concerned the accountants' work performed for the guardians and which concerned work performed for the ward.

Defendants' position seems to be that the so-called fiduciary exception to the attorney-client privilege does not apply to the accountant-client privilege. Defendants further argue that, even if the fiduciary exception is applicable to the accountant-client privilege, the "liability exception" also applies. Under the "liability exception", Defendants argue, a fiduciary seeking the advice of counsel for his own personal defense in contemplation of adversarial proceedings against beneficiaries retains the attorney-client privilege. *Hooper v. Unum Life Ins. Co. of America*, No. 5:11-cv-524-Oc-10TBS, 2012 WL 1415585, at *2 (M.D. Fla. Apr. 24, 2012) (applying fiduciary exception in case governed by federal law of attorney-client privilege). So,

---

[1] The Court rejects Plaintiff's argument that Defendant Kelly has failed to show that the guardians' accountants are "certified public accountants." The name of the accounting firm is "Marcus & Levine, CPAs, LLC", which belies Plaintiff's argument. The Court also rejects Plaintiff's argument that, because Defendant Kelly's accountants produced the documents in response to Plaintiff's subpoena without first obtaining the consent of Defendant Kelly, this constitutes a waiver by Defendant Kelly of the accountant-client privilege. The facts of this case clearly do not establish a waiver of the accountant-client privilege by Defendant Kelly. Further, these documents have not been reviewed by Plaintiff's counsel pending this Court's Order.

Defendants argue, if the analogous fiduciary exception applies to the accountant-client privilege (as argued by Plaintiff), then so does the "liability exception."

The Court first notes that the attorney-client privilege and the accountant-client privilege are distinct. While Florida case law has consistently stated that the confidentiality of attorney-client privileged communications "is an interest traditionally deemed worthy of maximum legal protection", see Section III(i), *supra*, Florida courts have not deemed the accountant-client privilege worthy of such maximum legal protection.

The Court next notes that, while there has been extensive case law on Florida's attorney-client privilege, there has been very little case law on Florida's accountant-client privilege. Further, Florida's accountant-client privilege under Section 90.5055, Florida Statutes, protects only confidential communications between accountants and guardians, as Defendant concedes.

Moreover, although the attorney-client privilege analyzed in the *Tripp* line of cases is arguably analogous to the accountant-client privilege, the *Tripp* line of cases is not directly applicable to the accountant-client privilege. Nor does Section 90.5021 apply to the accountant-client privilege, as both parties recognize. Additionally, the Court notes that, while Section 90.5055(3)(c) states that the accountant-client privilege may be claimed by the personal representative of the deceased client, the statute also expressly states that the accountant-client privilege may be claimed by the guardian. *See* Fla. Stat. § 90.5055(3)(a).

In considering all of the applicable facts and law, the Court finds that the privilege in this case, under these unique facts, is between the accountants and the guardians rather than between the accountants and Oliver Bivins, Sr.'s estate. The Court rejects Plaintiff's argument that the *Tripp* line of cases should apply with equal force to the accountant-client privilege. Plaintiff has

14

cited no authority, and the Court can find no authority through its independent research, that states that the *Tripp* line of cases should apply with equal force to the accountant-client privilege. Nonetheless, the *Tripp* line of cases may be informative to the extent that they suggest an *in camera* review procedure in the attorney-client privilege context which may be useful in the accountant-client privilege context.

Therefore, the Court will require that Marcus & Levin, CPAs, LLC, produce all non-privileged documents sought by the subpoena that have not already been produced by Defendant Kelly or by the other Defendants in this case. The Court will also require that Defendant Kelly complete a privilege log as to all privileged confidential communications sought by the subpoena and withheld from production. Further, in an abundance of caution and to ensure that the Court is fully informed as to the nature and content of the withheld confidential accountant-client communications, the court will review the documents withheld by Defendants *in camera* and issue a further Order subsequent to such *in camera* review.[2]

## IV.   CONCLUSION

In sum, the Court finds that Section 90.5021, Florida Statutes, supersedes the *Tripp* line of cases. Section 90.5021 established new substantive law in Florida. Pursuant to Section 90.5021, *Bain*, and *Walther*, the attorney-client privilege in this case runs between the guardian of the ward and the guardian's attorneys. Therefore, the guardians and the guardians' attorneys may assert the attorney-client privilege to prevent the production of privileged documents sought by Plaintiff.

---

[2] One reason for the Court's requirement of a privilege log and *in camera* review is that the Court does not fully understand the nature of the withheld confidential communications. For example, some of the withheld confidential communications may have been prepared after the filing of Plaintiff's lawsuit or after Defendants became aware of Plaintiff's intent to file a lawsuit against Defendants. By reviewing the confidential communications *in camera*, the Court can become fully informed as to the nature of the withheld confidential communications and enter any necessary further orders on the accountant-client privilege issue.

15

Additionally, under Section 90.5055(3)(b) and the unique facts of this case, the guardians may assert the privilege as to any confidential communications held by the guardians' accountants. Given the language of Section 90.5055(3)(b) and the fact that the *Tripp* line of cases does not directly and specifically apply to the accountant-client privilege, the Court finds that the accountant-client privilege runs between the accountants and the guardians. Nonetheless, the Court will review *in camera* any confidential communications withheld by the accountants or Defendant Kelly after the preparation of a privilege log to determine whether the Court should enter any further Order on the accountant-client privilege issue in this case.

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED** as follows:

1. As stated above, the Court finds that the Defendants' attorney-client privilege and accountant-client privilege objections are supported by the law and will uphold the objections as to these two privileges.

2. Defendants, Brian M. O'Connell, Ashley N. Crispin, Stephen Kelly, and Ciklin Lubitz & O'Connell's Second Corrected and Amended Motion for Protective Order [DE 83] is **GRANTED**. Paragraphs 1, 2, 3, 9, and 10-14 of the subpoena issued to Bill T. Smith, P.A. [DE 83-1] are QUASHED as they seek documents protected by the attorney-client privilege and/or the work-product doctrine. Paragraphs 2-12 of the subpoena issued to Templeton Smithee Hayes Heinrich & Russell, L.L.P. [DE 83-2] are QUASHED as they seek documents protected by the attorney-client privilege and/or the work product doctrine. The two non-parties shall produce any non-privileged documents responsive to the remaining portions of the subpoenas.

3. Defendant Stephen Kelly's Motion for Protective Order Regarding Subpoena for Documents to Accountants [DE 85] is **GRANTED IN PART AND DENIED IN**

16

**PART**.  Marcus & Levin, CPAs, LLC, shall produce all non-privileged documents sought by the subpoena that have not already been produced by Defendant Kelly or the other Defendants in this case.  Marcus & Levin, CPAs, LLC, shall not be required to produce any confidential communications protected by the accountant-client privilege at this time.  Defendant Kelly shall promptly complete and serve upon Plaintiff and all parties a privilege log within ten (10) days of the date of this Order as to all withheld privileged confidential communications sought by the subpoena.  Defendant Kelly shall also submit to the Court within fourteen (14) days of the date of this Order any confidential communications on an *ex parte* basis for *in camera* review, along with a copy of the privilege log.  Defendant Kelly shall deliver the documents to the undersigned's Chambers—701 Clematis Street, Room 221, West Palm Beach, Florida 33401.

4. Defendant Curtis Cahalloner Rogers, Jr.'s Motion for Protective Order [DE 89] is **GRANTED IN PART AND DENIED IN PART**.  The same rulings in paragraphs 1 and 2 above apply to Defendant Rogers' Motion.

5. Plaintiff's Motion to Compel CLO Defendants' Response to Plaintiff's First Request for Production [DE 112] is **GRANTED IN PART AND DENIED IN PART**.  The Court does not find that the CLO Defendants waived their objections.  The CLO Defendants are not required to produce any privileged documents, but they must submit a privilege log in compliance with the Local Rules to Plaintiff if they have not already done so.  The CLO Defendants shall also produce all relevant, non-privileged documents responsive to Plaintiff's First Request for Production to the extent that they have not already done so.  Additionally, the parties shall confer and cooperate

regarding the documents already produced in the state court litigation so that Plaintiff can better identify which documents are responsive.

6. Plaintiff's Motion to Compel Stephen Kelly's Response to Plaintiff's First Request for Production [DE 113] is **GRANTED IN PART AND DENIED IN PART**. Defendant Kelly is not required to produce any privileged documents, but he must submit a privilege log in compliance with the Local Rules to Plaintiff if he has not already done so. Defendant Kelly shall also produce all relevant, non-privileged documents responsive to Plaintiff's First Request for Production to the extent that he has not already done so. Additionally, the parties shall confer and cooperate regarding the documents already produced in the state court litigation so that Plaintiff can better identify which documents are responsive.

**DONE and ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 7th day of September, 2016.

WILLIAM MATTHEWMAN
United States Magistrate Judge